Anthony S. Petru, Esq. (State Bar No. 91399)
Ryan J. Otis, Esq. (State Bar No. 260032)
HILDEBRAND, McLEOD & NELSON, INC.
Westlake Building
350 Frank H. Ogawa Plaza, 4th Floor
Oakland, CA 94612
TEL: (510) 451-6732
FAX: (510) 465-7023

Attorney for Plaintiff:
Neil A. Jensen

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND

| | |
|---|---|
| NEIL A. JENSEN<br><br>Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY<br><br>Defendant. | CASE NO.<br><br>**COMPLAINANT FOR DAMAGES**<br><br>**Federal Railroad Safety Act: 49 U.S.C. § 20109 – Whistleblower** |

Plaintiff NEIL A. JENSEN, by this complaint, complains of Defendant BNSF RAILWAY COMPANY, a corporation, and alleges as follows:

**FIRST CAUSE OF ACTION**
**Federal Railroad Safety Act – 49 U.S.C. Section 20109 (Whistleblower)**

1

That this complaint is brought under and by virtue of the provisions of the Federal Rail Safety Act, 49 USC Sections 20109 *et seq.* and regulations promulgated by the Federal Railway Administration pursuant thereto.

2

That this Court has subject matter jurisdiction in this case pursuant to the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. Section 20109(d)(3), regardless of the amount in controversy.

3

The Plaintiff, NEIL A. JENSEN ("JENSEN"), is of Clovis, California.

4

That at all times herein mentioned, defendant, BNSF RAILWAY COMPANY ("BNSF") was subject to the above mentioned statutes and regulations and that BNSF was and is a carrier engaged in interstate commerce.

5

That at all times herein mentioned, BNSF was and is a railroad carrier providing railroad freight transportation within Alameda and Contra Costa Counties, owning railroad tracks within Alameda and Contra Costa Counties, owning and/or operating rail yards in said counties, and maintaining an office in Richmond, California.

6

That this Court is the proper venue since this Complaint may be brought in the "appropriate district court of the United States," pursuant to 49 U.S.C. § 20109(d)(3), which includes any District in which defendant BNSF performs business, and as described herein, BNSF's business within Alameda and Contra Costa Counties establishes minimum contacts with said counties, thereby subjecting BNSF to personal jurisdiction within this Northern District.

7

That at the time of the defendant's FRSA violations, BNSF was employed by the defendant as a trainman, and qualified as an employee within the meaning of 49 U.S.C. § 20109.

8

That on or about April 25, 2003, JENSEN, in BNSF's Fresno, California yard in Fresno County, engaged in protected activities under the FRSA when he reported, in good faith, an on-duty injury.

9

That beginning on or about July 30, 2009, JENSEN's treating physician first prescribed a treatment plan (hereinafter "TREATMENT PLAN") for JENSEN's on-duty injury which stated

2

Complaint for Damages – Federal Railroad Safety Act: 49 U.S.C. §§ 20109 *et seq.* – Whistleblower

that JENSEN may need to miss work three to eight days per month, based on need, in order to rest his injured wrist, for the remainder of his employment at BNSF.

10

That BNSF had repeated notice of this TREATMENT PLAN after it was first prescribed, including July 30, 2009, during trial in October 2010, and during the disciplinary investigations held on February 15, 2011, March 30, 2011, July 19, 2011, September 28, 2011, and February 21, 2012.

11

That during the months of October 2010, November 2010, and December 2010, JENSEN engaged in the protected activities of following his doctor's TREATMENT PLAN by missing work in order to rest his wrist that was injured on-duty on April 25, 2003, and following another doctor's separate treatment plan and/or orders by missing work due to a separate illness.

12

That BNSF took adverse or unfavorable actions against JENSEN in whole or in part due to JENSEN's protected activities he engaged in during October 2010, November 2010, and December 2010, as described in Paragraph 11 hereinabove, when BNSF charged JENSEN with company rules violations in connection therewith on January 12, 2011, held an investigation hearing regarding said charged rules violations on February 15, 2011, and issued discipline of a Formal Reprimand against JENSEN on March 11, 2011. In so doing, BNSF acted with reckless disregard for the law and with complete indifference to JENSEN's rights under the FRSA.

13

That BNSF had repeated notice of the TREATMENT PLAN and another doctor's separate treatment plan and/or orders for JENSEN's illness, both of which are described above in Paragraph 11, before, during, and/or after October 2010, November 2010, and December 2010, when it charged JENSEN with company rules violations in connection therewith on January 12, 2011, held an investigation hearing regarding said charged rules violations on February 15, 2011, and issued discipline of a Formal Reprimand against JENSEN on March 11, 2011.

///

3

Complaint for Damages – Federal Railroad Safety Act: 49 U.S.C. §§ 20109 *et seq.* – Whistleblower

14

That during the months of December 2010, January 2011, and February 2011, JENSEN engaged in the protected activities of following his doctor's TREATMENT PLAN by missing work in order to rest his wrist that was injured on-duty on April 25, 2003, and following another doctor's separate treatment plan and/or orders by missing work due to a separate illness.

15

That BNSF took adverse or unfavorable actions against JENSEN in whole or in part due to JENSEN's protected activities he engaged in during December 2010, January 2011, and February 2011, as described in Paragraph 14 hereinabove, when BNSF charged JENSEN with company rules violations in connection therewith on March 9, 2011, held an investigation hearing regarding said charged rules violations on March 30, 2011, and issued discipline of a 10 Day Record Suspension against JENSEN on April 14, 2011. In so doing, BNSF acted with reckless disregard for the law and with complete indifference to JENSEN's rights under the FRSA.

16

That BNSF had repeated notice of the aforementioned TREATMENT PLAN and another doctor's separate treatment plan and/or orders for JENSEN's illness, both of which are described in Paragraph 14 hereinabove, before, during, and/or after December 2010, January 2011, and February 2011, when it charged JENSEN with company rules violations in connection therewith on March 9, 2011, held an investigation hearing regarding said charged rules violations on March 30, 2011, and issued discipline of a 10 Day Record Suspension against JENSEN on April 14, 2011.

17

That during the months of April 2011, May 2011, and June 2011, JENSEN engaged in the protected activity of following his doctor's TREATMENT PLAN by missing work in order to rest his wrist that was injured on-duty on April 25, 2003.

18

That BNSF took adverse or unfavorable actions against JENSEN in whole or in part due to JENSEN's protected activities he engaged in during April 2011, May 2011, and June 2011,

Complaint for Damages – Federal Railroad Safety Act: 49 U.S.C. §§ 20109 *et seq.* – Whistleblower

when BNSF charged JENSEN with company rules violations in connection therewith on July 11, 2011, held an investigation hearing regarding said charged rules violations on July 19, 2011, and issued discipline of a 20 Day Record Suspension against JENSEN on August 5, 2011. In so doing, BNSF acted with reckless disregard for the law and with complete indifference to JENSEN's rights under the FRSA.

19

That BNSF had repeated notice of the aforementioned TREATMENT PLAN, before, during, and/or after April 2011, May 2011, and June 2011, when it charged JENSEN with company rules violations in connection therewith on July 11, 2011, held an investigation hearing regarding said charged rules violations on July 19, 2011, and issued discipline of a 20 Day Record Suspension against JENSEN on August 5, 2011.

20

That during the months of June 2011, July 2011, and August 2011, JENSEN engaged in the protected activity of following his doctor's TREATMENT PLAN by missing work in order to rest his wrist that was injured on-duty on April 25, 2003, and following another doctor's separate treatment plan and/or orders by missing work due to JENSEN's other medical reasons.

21

That BNSF took adverse or unfavorable actions against JENSEN in whole or in part due to JENSEN's protected activities he engaged in during June 2011, July 2011, and August 2011, as described in paragraph 20 hereinabove, when BNSF charged JENSEN with company rules violations in connection therewith on September 14, 2011, held an investigation hearing regarding said charged rules violations on September 28, 2011, and issued discipline of a 20 Day Record Suspension and One Year Review Period against JENSEN on October 26, 2011. In so doing, BNSF acted with reckless disregard for the law and with complete indifference to JENSEN's rights under the FRSA.

22

That BNSF had repeated notice of the aforementioned TREATMENT PLAN and another doctor's separate treatment plan and/or orders regarding JENSEN's other medical reasons,

Complaint for Damages – Federal Railroad Safety Act: 49 U.S.C. §§ 20109 *et seq.* – Whistleblower

both of which are described in Paragraph 20 hereinabove, before, during and/or after June 2011, July 2011, and August 2011, when it charged JENSEN with company rules violations in connection therewith on September 14, 2011, held an investigation hearing regarding said charged rules violations on September 28, 2011, and issued discipline of a 20 Day Record Suspension and One Year Review Period against JENSEN on October 26, 2011.

23

That during the months of November 2011, December 2011, and January 2012, JENSEN engaged in the protected activity of following his doctor's TREATMENT PLAN by missing work in order to rest his wrist that was injured on-duty on April 25, 2003, and following another doctor's separate treatment plan and/or orders by missing work due JENSEN's illness.

24

That BNSF took adverse or unfavorable actions against JENSEN in whole or in part due to JENSEN's protected activities he engaged in during November 2011, December 2011, and January 2012, as described in Paragraph 23 hereinabove, when BNSF charged JENSEN with company rules violations in connection therewith on February 9, 2012, held an investigation hearing regarding said charged rules violations on February 21, 2012, and terminated JENSEN on March 19, 2012. In so doing, BNSF acted with reckless disregard for the law and with complete indifference to JENSEN's rights under the FRSA.

25

That BNSF had repeated notice of the aforementioned TREATMENT PLAN and another doctor's separate treatment plan and/or orders for JENSEN's illness, both of which are described in Paragraph 23 hereinabove, before, during, and/or after November 2011, December 2011, and January 2012, when it charged JENSEN with company rules violations in connection therewith on February 9, 2012, held an investigation hearing regarding said charged rules violations on February 21, 2012, and terminated JENSEN on March 19, 2012.

26

On September 5, 2011, the Plaintiff filed a FRSA Complaint with the Secretary of Labor's Region 9 OSHA Whistleblower Office (Complaint and Email sending Complaint to

Complaint for Damages – Federal Railroad Safety Act: 49 U.S.C. §§ 20109 et seq. – Whistleblower

OSHA are attached hereto as **Exhibit 1**), and continued to notify said OSHA Office about the additional adverse actions herein described, including but not limited to notifying said OSHA Office on March 23, 2012 of Plaintiff's termination. Plaintiff's action was therefore filed within the applicable 180 days from the date the plaintiff became aware of BNSF's intent to take the aforementioned adverse or unfavorable personnel actions against him.

27

The Region 9 OSHA Whistleblower Office commenced its investigation, and the Plaintiff fully cooperated with OSHA's investigation. However, OSHA did not issue a final decision within 210 days after the filing of the FRSA Complaint. The delay was not due to any bad faith on the part of the Plaintiff.

28

Pursuant to Section (d)(3) of the FRSA, the Plaintiff has a statutory right to bring an original action in a United States district court for a jury trial regarding the Railroad's violations of the FRSA. 49 U.S.C. Section 20109(d)(3). On November 22, 2013, the Plaintiff filed with the US Department of Labor a Notice of Intent to File Original Action (attached hereto as **Exhibit 2**).

29

Pursuant to FRSA 49 U.S.C. Section 20109(d)(3), the plaintiff now is bringing this original action at law and equity for de novo review by the United States District Court, Eastern District – Oakland, which Court has jurisdiction over this FRSA action without regard to the amount in controversy.

WHEREFORE, in order to encourage employees to freely report all injuries and safety concerns without fear of any retaliation, thereby ensuring the Federal Rail Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area of our nation's railroad operations, the Plaintiff demands a Judgment under the FRSA for all relief necessary to make him whole, according to proof, including but not limited to: reinstatement, expungement of all references to disciplinary action related to the the aforementioned disciplinary incidents; lost benefits with interest; lost wages with interest; compensatory damages for economic losses due to defendant's conduct; compensatory damages

for mental anguish and emotional distress due to defendant's conduct; the statutory maximum of punitive damages; for all relief available pursuant to the FRSA, and special damages for all litigation costs including expert witness fees and attorney fees.

DATED: December 23, 2013       HILDEBRAND, McLEOD & NELSON, INC.

By: _____
RYAN J. OTIS
Attorney for Plaintiff
NEIL A. JENSEN

Complaint for Damages – Federal Railroad Safety Act: 49 U.S.C. §§ 20109 *et seq.* – Whistleblower

# EXHIBIT 1

Ryan J. Otis, Esq. (State Bar No. 260032)
Kristoffer S. Mayfield, Esl. (State Bar No. 241093)
HILDEBRAND, McLEOD & NELSON, INC.
Westlake Building
350 Frank H. Ogawa Plaza, 4th Floor
Oakland, CA 94612
TEL:  (510) 451-6732
FAX:  (510) 465-7023

Attorney for Complainant
NEIL A. JENSEN

UNITED STATES DEPARTMENT OF LABOR DIVISION OF
OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION
SAN FRANCISCO, CALIFORNIA

| | |
|---|---|
| NEIL A. JENSEN<br><br>Complainant,<br><br>vs.<br><br>BNSF RAILWAY COMPANY<br><br>Respondent. | CASE NO.<br><br>COMPLAINT TO THE UNITED STATES DEPARTMENT OF LABOR, OCCUPATIONAL HEALTH AND SAFETY DIVISION, FOR DAMAGES PURSUANT TO 49 USC §§ 20109 ET SEQ. |

Complainant NEIL A. JENSEN ("JENSEN"), complains against the Respondent BNSF RAILWAY COMPANY ("BNSF"), and alleges as follows:

1

That this complaint is brought under and by virtue of the provisions of the Federal Rail Safety Act, 49 USC § 20109 *et seq*. and regulations promulgated by the Federal Railway Administration pursuant thereto.

2

That at all relevant times the facts and circumstances of this complaint arose while BNSF was subject to the above mentioned statutes and regulations and that JENSEN was employed as a conductor by BNSF and that BNSF was and is a carrier engaged in interstate commerce and subject to the aforesaid federal statutes and regulations relating to retaliation and harassment.

1

Complaint to the United States Department Of Labor – Occupational Health And Safety Division – Pursuant To 49 USC §§ 20109 *Et Seq.*

3

This complaint satisfies the statute of limitations requirement under 49 USC § 20109(d)(2)(A)(ii) since it is being filed 180 days from the earliest date of discrimination and harassment on March 9, 2011.

4

That on or about April 2003 JENSEN suffered an on-duty injury to his wrist and hand which resulted in four surgeries to his wrist, including a partial fusion. JENSEN filed a lawsuit in San Joaquin County against BNSF under the Federal Employer's Liability Act ("FELA") which went to trial in November 2010 and reached a substantial verdict against BNSF.

5

During trial, JENSEN's treating physician Dr. Randi Galli testified in front of BNSF attorneys, at least one BNSF manager, and at least one BNSF claims representative, that due to JENSEN's extensive injuries and treatment, JENSEN requires 3 to 8 days off per month in order to rest his and maintain his injured wrist. Dr. Galli has also written such information in a prescription note that has been provided to BNSF.

6

In earlier 2010 prior to trial, JENSEN was diagnosed with cancer and missed work time due to the treatment of that condition under the Family and Medical Leave Act ("FMLA"). JENSEN used up all his available FMLA time for this condition for a twelve month period.

7

JENSEN returned to work in mid-November, on or about November 16, 2010. He had missed work in October 2010 and the first part of November under an excused absence.

8

Once returning to work in November 2010, JENSEN missed four days of work, 2 weekdays and 2 weekends, in order to rest and maintain his injured wrist, as prescribed by Dr. Galli's treatment plan.

///

///

2

Complaint to the United States Department Of Labor – Occupational Health And Safety Division – Pursuant To 49 USC §§ 20109 Et Seq.

9

In December 2010, JENSEN allegedly missed 14 days, 11 weekdays and 3 weekend days. JENSEN believes he missed approximately 2 days in this month due to his wrist injury, as prescribed by Dr. Galli's treatment plan. JENSEN missed 9 days during this month due to severe illness, which was part of another physician's treatment plan and required time off as well as prescription medication; this time was excused by signed medical notes provided to BNSF.

10

In January 2011, BNSF claims JENSEN missed approximately 11 days of work. These missed days were due to illness and again, were part of JENSEN's physician's treatment plan as shown by his signed medical excuse notes which were provided to BNSF.

11

In February 2011, JENSEN believes he missed four work days which were solely attributable to his wrist injury and part of Dr. Galli's prescribed treatment as mentioned above.

12

On or about March 11, 2011, BNSF issued a Formal Reprimand for JENSEN's alleged violation of BNSF's attendance policy during the months of October, November, and December 2010. The investigation hearing was held on February 15, 2011 during which time JENSEN provided BNSF with sufficient evidence that he did not violate the BNSF attendance policy:

   A. BNSF manager Darrell Kitchen acknowledged that October 2010 was an excused month regarding JENSEN's attendance guidelines and would not count against JENSEN.

   B. According to BNSF's attendance guidelines, in the month of November, 2010 JENSEN was allowed to have 2.5 weekdays off and 1 weekend day off.

   C. BNSF claimed in the investigation that JENSEN violated its attendance guidelines since JENSEN missed 2 weekdays and 2 weekend days.

   D. However, JENSEN provided evidence that his time off in November 2010, as shown above in Paragraph 8 was due solely to his medical treatment plan for his wrist injury as prescribed by his treating hand surgeon, Dr. Randi Galli.

3

Complaint to the United States Department Of Labor – Occupational Health And Safety Division – Pursuant To 49 USC §§ 20109 *Et Seq.*

E. In December 2010, BNSF claimed that according to its guidelines, JENSEN was allowed 4.75 weekdays off and 2 weekend days off but that JENSEN missed 11 weekdays and 3 weekend days, thereby violating its attendance guidelines.

F. As stated above in Paragraph 9, JENSEN showed that 2 of his days off were directly attributable to his wrist injury treatment plan while 9 were due to his treatment plan for his illness. Taking these excusable days out of the calculation leaves a total of three days off which fits within BNSF's alleged attendance guidelines.

The evidence listed herein shows that JENSEN's missed days in November and December were due to JENSEN following his treatment plans regarding his wrist and illness which should have been excused absences which do not adversely affect JENSEN's attendance. In sum, JENSEN showed that he did not violated BNSF's attendance guidelines.

13

On or about March 9, 2011, BNSF issued a notice of investigation regarding JENSEN's alleged violations of BNSF's attendance guidelines for the months of December, 2011, January, 2011 and February, 2011. On or about March 30, 2011, BNSF held an investigation hearing at which time BNSF again charged that JENSEN's missed time violated BNSF's attendance guidelines. As with JENSEN's February 15, 2011 investigation, JENSEN proved that his missed days were due to him following his doctors' treatment plans:

A. Despite being charged for violating BNSF's attendance guidelines for December 2010 in the February 15, 2011 investigation, BNSF again charged JENSEN for alleged violations in the same month. As done previously, JENSEN offered evidence that his 11 of his 14 missed days were attributable to his following medical treatment plans, as described in Paragraphs 9 and 12(E).

B. For January, 2011, BNSF claimed that JENSEN missed approximately 11 days when he was supposedly allowed only 1 day off, thus violating its attendance guidelines.

4

Complaint to the United States Department Of Labor – Occupational Health And Safety Division – Pursuant To 49 USC §§ 20109 *Et Seq.*

    C. For this same January period, JENSEN offered medical excuse notes signed by his doctors that JENSEN was sick and could not work, therefore showing that JENSEN's missed work was due to following his doctor's treatment plan for his aforementioned illness described in Paragraphs 9 and 10.

    D. For February 2011, BNSF claimed that JENSEN missed approximately 4 days when he was allowed to miss only 1, thereby allegedly violating its attendance guidelines.

    E. In his defense, JENSEN again offered evidence that his four missed days were due to his wrist injury and that he was following Dr. Galli's aforementioned treatment plan of missing 3 to 8 days per month.

These facts show that JENSEN's missed days in December 2010, January, 2011, and February, 2011 were due to him following his medical treatment plans for his wrist and illness and exonerating him from any claimed attendance policy violations.

14

Despite JENSEN's evidence excusing his absences for the December 2010 through February 2011 period, BNSF issued JENSEN a 10-day record suspension on April 14, 2011.

15

BNSF continues to issue JENSEN notices of investigation regarding his alleged attendance guideline violations. On May 11, 2011 BNSF issued a charge letter regarding JENSEN's alleged violation of BNSF's attendance guidelines during February, March and April 2011, and requiring an investigation hearing on May 24,, 2011. On July 11, 2011 BNSF issued another letter to JENSEN for his alleged violation of BNSF's attendance guidelines during April, May, and June 2011, and requiring JENSEN to attend a formal investigation hearing on July 19, 2011.

16

JENSEN has engaged in the protected activity of following a treatment plan for his wrist injury and illness in the months of November, 2010 through February, 2011 as defined by 49 U.S.C. § 20109(c)(2).

5

Complaint to the United States Department Of Labor – Occupational Health And Safety Division – Pursuant To 49 USC §§ 20109 *Et Seq.*

17

JENSEN has also engaged in the protected activity of notifying BNSF of a work related injury, as defined by 49 U.S.C. § 20109(a)(4), since he continually notifies BNSF that he suffered injury and is treating for such a condition.

18

BNSF has engaged in the following adverse actions as defined by 49 U.S.C. § 20109(c)(2):

    A. Bringing charges against JENSEN on March 9, 2011;

    B. Issuing JENSEN a Formal Reprimand on March 11, 2011;

    C. Engaging in an Investigation Hearing on March 30, 2011;

    D. Issuing JENSEN a 10 Day Record Suspension on April 14, 2011.

    E. Bringing charges against JENSEN on May 11, 2011, and July 11, 2011

19

BNSF's adverse actions listed in Paragraph 18 have violated 49 U.S.C. § 20109(c)(2) since, as discussed above, JENSEN's missed days were due to him following his doctors' treatment plans for his illness and wrist injury yet BNSF instituted charges against JENSEN, reprimanded him, and disciplined him for missing these days. It was only in December, 2010 that JENSEN's excusable days allegedly were not completely for his treatment plans, but his remaining 3 missed days were within the excusable amount. Furthermore, BNSF's charge letter from May 2011 includes an allegation that JENSEN violated the attendance guidelines in February 2011 which as discussed in Paragraphs 11 and 13(E), were missed solely to JENSEN's medical treatment plan for his wrist injury. It is also believed that JENSEN's absences since February 2011 continue to be, at least in part or in whole, due to him following his treatment plan prescribed by Dr. Galli for JENSEN's wrist injury which therefore encompass the May and July 2011 charges.

20

BNSF has continued to violated 49 U.S.C. § 20109(c)(2) because it disciplined JENSEN twice regarding his attendance for the same month: December 2010.

6

Complaint to the United States Department Of Labor – Occupational Health And Safety Division – Pursuant To 49 USC §§ 20109 *Et Seq.*

///

21

BNSF's attendance guidelines is not a rigid and unmoving standard but nonetheless BNSF still chose to discipline JENSEN in violation of 49 U.S.C. §20109(c)(2). BNSF's own attendance policy provides that BNSF managers should never act in a rigid manner for determining supposed attendance violations: "Local member of the BNSF transportation management team are specifically empowered to apply these Guidelines considering all relevant information. Managers should never act in a rigid or wooden manner, and in every case should use common sense." Despite this provision, and JENSEN's medically excused absences, BNSF still chose to discipline JENSEN numerous times.

22

BNSF's actions above are evidence of retaliation and harassment in violation of 49 U.S.C. § 20109(a)(4) because JENSEN repeatedly notified BNSF of his on-duty injury and BNSF still is disciplining and harassing him regarding his on-duty injury for which he continually notifies BNSF.

23

Claimant believes he was disciplined and harassed for reporting an on-duty injury and following his treatment plan due because BNSF is attempting to retaliate against and discipline JENSEN for his successful FELA injury lawsuit in a potential attempt to discourage other employees from filing FELA lawsuits and/or returning to service following said lawsuit. Claimant believes these are the motivating factors for BNSF to discriminate against and discipline Claimant.

24

At this time, Claimant has not suffered lost wages, lost benefits, or a loss of earning capacity as a direct result of BNSF's above described violations of law. However, given BNSF's series of charge letters and upcoming investigations Claimant may suffer lost wages, benefits, or earning capacity in the future as well as additional discipline, harassment, intimidation, and retaliation.

///

7

///

25

As a further direct and legal result of BNSF's above described tortious wrongful conduct, Claimant has suffered, and believes he will continue to suffer, humiliation, anxiety, mental anguish and emotional distress all to his damage and to be established according to proof.

26

The above described wrongful conduct of the BNSF was done with malice, fraud, and oppression and reckless disregard of Claimant's right to follow his treatment plan and report an "on-duty" injury in good faith to BNSF's managers and directors. BNSF has ratified and adopted the wrongful conduct of its supervisors and directors in discriminating and retaliating against Claimant.

WHEREFORE, Claimant prays for judgment against BNSF as follows:

1. For the removal of all discipline and mention regarding the aforementioned investigations and discipline from Claimant's record;
2. For general damages according to proof;
3. All costs of this suit;
4. Pre and post judgment interest;
5. For punitive damages according to proof;
6. For all relief available pursuant to the Federal Rail Safety Act, 49 USC §§ 20109 *et seq.*
7. For attorneys fees according to proof; and
8. For such other relief as OSHA deems just and proper.

DATED: September 5, 2011                    HILDEBRAND, McLEOD & NELSON, INC.

By:_____/S/_____
RYAN J. OTIS
Attorney for Claimant
NEIL A. JENSEN

8

Complaint to the United States Department Of Labor – Occupational Health And Safety Division – Pursuant To 49 USC §§ 20109 *Et Seq.*

# EXHIBIT 2

U.S. DEPARTMENT OF LABOR

Case No. 9-3290-11-073                                November 21, 2013

In the Matter of

NEIL A. JENSEN
    Complainant

v.

BNSF RAILWAY COMPANY
    Respondent

## NOTICE OF INTENTION TO FILE ORIGINAL ACTION
## IN UNITED STATES DISTRICT COURT

Pursuant to the provisions of the Federal Rail Safety Act, 49 U.S.C. 20109(d)(3), the Complainant hereby gives notice of his intent to file an original action in the United States District Court. The Complainant's FRSA Complaint was filed more than 210 days ago, and as of this date the Secretary of Labor has not issued a final decision.

FOR THE CLAIMANT
NEIL A. JENSEN

BY: _____
Ryan J. Otis (California Bar No. 260032)
Hildebrand McLeod & Nelson Inc.
350 Frank H. Ogawa Plaza,
4th Floor
Oakland, CA 94612
(510) 451-6732

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this 22nd day of November, 2013 to:

Kenneth Atha
Regional Administrator Region 9
Occupational Safety & Health Administration
90 7th Street, Suite 18100
San Francisco, California 94103

Assistant Secretary Region 9
Occupational Safety & Health Administration
90 7th Street, Suite 18100
San Francisco, California 94103

Associate Solicitor
U.S. Department of Labor
Division of Fair Labor Standards
200 Constitution Ave, NW, N2716
Washington, DC 20210

Andrea Hyatt
General Attorney
BNSF Law Department, AOB-3
2500 Lou Menk Drive
Fort Worth, Texas 76131-2828

Joshua B. Paul
Regional Supervisory Investigator
DOL / OSHA Region IX
San Francisco Federal Building
90 7th Street Suite 18-100
San Francisco, CA 94103

Neil Jensen
2367 Paul Avenue
Clovis, CA 93611

Ryan J. Otis (California Bar No. 260032)]