UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| NEIL A. JENSEN,<br><br>                      Plaintiff,<br>    v.<br><br>BNSF RAILWAY COMPANY<br><br>                      Defendant.<br>_____/ | No. 3:13-cv-05955-HSG (LB)<br><br>**ORDER RE DISCOVERY LETTER BRIEF AT ECF NO. 56** |

## INTRODUCTION

The plaintiff Neil Jensen alleges that his former employer BNSF Railway violated the Federal Rail Safety Act, 49 U.S.C. § 20109, when it charged him with rules violations, disciplined him, and fired him based on his absence from work, an absence that he claims was justified because he injured his wrist. (Complaint, ECF No. 1.[1]) The statute generally prohibits disciplining and firing employees for their protected conduct, which includes an employee's following the orders or treatment plan of a treating physician. *See* 49 U.S.C. § 20109(c)(2). The parties have another discovery dispute. (Joint Letter Brief, ECF No. 56.[2]) They dispute whether Mr. Smith can depose Greg Fox, BNSF Executive Vice President of Operations, and Andrea Hyatt, General Attorney

---

[1] Citations are to the Electronic Case File ("ECF"); pin cites are to the ECF-generated page numbers at the tops of documents.

[2] Citations are to the Electronic Case File ("ECF"); pin cites are to the ECF-generated page numbers at the tops of documents.

3:13-cv-05955-HSG (LB)
ORDER

BNSF Law Department.[3] (*Id.*) The court also ordered a Rule 30(b)(6) deposition on May 11, 2015, and Mr. Jensen wants a two-week extension of time to take the deposition. (*Id.*; 5/11/15 Order, ECF No. 51,) The court held a hearing on May 19, 2015 and grants BNSF's motion for a protective order as to Mr. Fox, grants it as to Ms. Hyatt on this record and without prejudice to Mr. Jensen's raising the issue again, allows a two-week extension of time for the Rule 30(b)(6) deposition, directs a meet-and-confer to take place by Wednesday, May 20, 2015, and orders the parties to submit any further fact submissions about Ms. Hyatt by Friday, May 22, 2015 at 2 p.m.

**STATEMENT**

Mr. Jensen deposed fact witnesses responsible for his firing. (Joint Letter Brief, ECF No. 53 at 3; Joint Letter Brief, ECF No. 56 at 2.) On May 5, 2015, Mr. Jensen noticed Ms. Hyatt's deposition. (Joint Letter Brief, ECF No. 56 at 2.) BNSF identified her in its initial disclosures. (*Id.*) On May 11, 2015, Mr. Jensen's counsel deposed BNSF Director of Labor Relations Andrea Smith, who apparently mentioned Mr. Fox. (*Id.*) On May 13, 2015, Mr. Jensen's counsel noticed Mr. Fox's deposition for May 26, 2015, after the close of fact discovery. (*Id.*) The proposed depositions at that time would have been depositions 11 and 12 (so outside the ten-deposition limit set forth in Federal Rule of Civil Procedure 30(a)(2)(A)(i)). (*Id.* at 3.) (At the May 19, 2015, Mr. Jensen's counsel withdrew the deposition notices for Charles Shewmake, BNSF's General Counsel, and Lyn Robbins, BNSF Senior General Attorney, so the depositions are within the presumptive limit).

Mr. Jensen's counsel said that he just learned of Mr. Fox's involvement, and he "likely has relevant and unique information pertinent to Plaintiff's [punitive] damages case." (*Id.* at 1.) Mr. Jensen wants to depose Ms. Hyatt because she was "involved in the accommodation process that Plaintiff requested and in the decision making process in the termination." (*Id.*) He said,

> Likewise it has been revealed by multiple witnesses that Ms. Hyatt also was present in meetings to determine the Plaintiff's fate with the company and Plaintiff is entitled to question her. Further, Ms. Hyatt had dealings with counsel for Plaintiff directly instructing counsel to put in for accommodations for Mr. Jensen. Witness Hill, Defendant's HR Director, testified that Ms. Hyatt co-authored letters regarding Plaintiff and was involved administratively in the accommodation process and termination. Therefore, Ms. Hyatt has unique information pertaining to that process and determination. Defendant has refused to present Ms. Hyatt stating that as counsel, her testimony is privileged and further, that Plaintiff can obtain any information that she

---

[3] These are the exact titles listed in the letter brief.

1  may have through other means. This is simply not so.
2  (*Id.* at 3.)

3  BNSF says that Mr. Fox "had absolutely no role in the decision to discipline or terminate
4  Plaintiff." (*Id.* at 4.) BNSF points to Mr. Jensen's failure to depose fact witness Leif Smith, "who
5  (unlike Mr. Fox) had direct involvement in the decision to dismiss Plaintiff. Not only is this
6  emblematic of Plaintiff's lack of diligence in conducting discovery, but it also lays bare Plaintiff'
7  apparent tactic to harass BNSF officials at the highest levels." (*Id.*) As to Ms. Hyatt, "her
8  involvement was solely in the capacity of an attorney representing BNSF" and "commenced only
9  after Plaintiff's counsel threatened litigation." (*Id.*) Her role "has been to responding to Plaintiff's
10 counsel's demands and providing BNSF with legal advice. (*Id.* at 4-5.) "Ms. Hyatt was not involved
11 in the decision to terminate Plaintiff." (*Id.* at 5.) Moreover, BNSF said that Mr. Jensen's counsel
12 (presumably Ryan Otis, who apparently left the firm two weeks ago) "previously agreed not to
13 depose Ms. Hyatt. A compromise was reached based on the fact that Ms. Hyatt's involvement with
14 this case was prompted by Plaintiff's counsel and that BNSF had produced all non-privileged
15 documents by Ms. Hyatt." (*Id.*)

16 At the May 19, 2015 hearing, BNSF's counsel confirmed that Mr. Fox and Ms. Hyatt are not
17 trial witnesses. Mr. Jensen's counsel said that he wanted to depose Ms. Hyatt only as a fact witness
18 and only for two hours, and he said that her knowledge (based on the deposition of Mr. Hill) was
19 unique to her. BNSF's counsel said that he in turn would be entitled to depose Mr. Petrou (the
20 lawyer for Mr. Jensen who communicated with Ms. Hyatt) because whatever her communications
21 were, they were in response to Mr. Petrou.

## ANALYSIS

23 Mr. Jensen's counsel believes that he "is entitled to question Mr. Fox about the decision-making
24 process which led to the Plaintiff's termination and his knowledge and awareness of the attendance
25 violations" that BNSF attributes to Mr. Jensen. (*Id.* at 3.) "Plaintiff would be prejudiced and open to
26 unfair surprise at trial if not allowed to question Mr. Fox on these matters." (*Id.*) It is Mr. Jensen's
27 "good faith belief that both Mr. Fox and Ms. Hyatt have unique knowledge regarding the facts and
28 procedures used in Defendant's determination to terminate Mr. Jensen." (*Id.* at 4.)  On this record,

the court does not see grounds for allowing the depositions, particularly for Mr. Fox.

Under Rule 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including forbidding a deposition, or limiting its scope. The party seeking a protective order bears the burden of showing good cause for the order by "demonstrating harm or prejudice that will result from the discovery." *Apple v. Samsung*, 282 F.R.D. 259, 262-63 (N.D. Cal. 2012). When a party seeks the deposition of a high-level executive (a so-called "apex" deposition), courts have "observed that such discovery creates a tremendous potential for abuse or harassment." *Id.* at 263. The court therefore has discretion to limit discovery where the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Id.*

"In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Id*. "A party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied." *Id*. Thus, it is very unusual "for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances." *Id*. "When a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition." *Id*. "A claimed lack of knowledge, by itself it is insufficient to preclude a deposition." *Id.*

The case involves punitive damages. (5/11/15 Order, ECF No. 51 at 2-3.) The discovery is aimed at Mr. Jensen's position that he was fired because of absences that were justified for medical reasons. (*Id.* at 3.) But Mr. Fox and Ms. Hyatt are not fact witnesses, and they will not be trial witnesses. Discovery is more appropriate (indeed, only appropriate based on this record) from other witnesses. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Mr. Jensen has had ample opportunity to develop his facts, including facts relevant to punitive damages. *See* Fed. R. Civ. P. 26(b)(2)(C)(ii). Moreover, Mr. Fox is an apex witness. And on this record, the court can conclude only that Ms. Hyatt acted as an attorney. *See Graff v. Hunt & Henriques*, 5:08-cv-00908-JF(PVT), 2008 WL 2854517, at *1 (N.D. Cal. July 23, 2008) (discussing limitations that apply to attorney depositions).

That said, Mr. Petrou at least made a proffer that Ms. Hyatt has unique fact information tailored

to her co-authoring of specific letters, and he asserts that this fact information is relevant to punitive damages. BNSF disputes this, but the court cannot tell on this record. The court's view is that it seems unlikely, and depositions might be better spent on fact witnesses who were responsible for the terminations. In light of BNSF's production of Ms. Hyatt's non-privileged communications, it seems that prior counsel Mr. Otis likely agreed. And, as the court said in its earlier order today at ECF No. 58, additional questions relevant to punitive damages can be addressed through the Rule 30(b)(6) witness.

On this record, the court grants the protective order as to Mr. Fox. The court grants the motion for an additional two weeks to complete the deposition of the Rule 30(b)(6) witness that the court allowed in its May 11, 2015 order. As for Ms. Hyatt, the court grants the protective order too but without prejudice to Mr. Jensen's making a more robust factual proffer. The parties must confer by close of business on Wednesday, May 20, 2015, about whether Mr. Jensen wants to spend his last deposition on Ms. Hyatt for a total of two hours, and if, in turn, that makes a reciprocal deposition of Mr. Petrou appropriate. If the parties cannot agree on the appropriateness of a deposition of Ms. Hyatt, then both parties may submit the facts (perhaps in the form of the letters at stake or specific excerpts from Mr. Hill's deposition) showing that – under the legal standard that applies to deposing attorneys – the facts do or do not justify deposing Ms. Hyatt. The parties must submit those facts by 2 p.m. on Friday, May 22, 2015. At the meet-and-confer, the parties must agree on the time for the Rule 30(b)(6) deposition.

## CONCLUSION

This disposes of ECF No. 56.

**IT IS SO ORDERED.**

Dated: May 19, 2015

LAUREL BEELER
United States Magistrate Judge